UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL GENE FISHER, JR.,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>C. PFEIFFER, Warden,<br><br>　　　　　Respondent. | No. 1:17-cv-01050-JLT (HC)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT**<br><br>**ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY** |

Petitioner is currently incarcerated at Kern Valley State Prison. On April 24, 2015, he was convicted of indecent exposure in prison. He has filed the instant habeas action challenging the conviction. As discussed below, the Court finds the claims to be without merit and **DENIES** the petition.

**I.　　PROCEDURAL HISTORY**

On February 27, 2015, a complaint was filed alleging that Petitioner violated Cal. Penal Code § 314.1, a misdemeanor, for indecent exposure. (LD 1.[1]) On April 24, 2015, he was convicted by jury trial and sentenced to a consecutive six-month sentence. (LD 2.) In addition, he was ordered to register as a sex offender. (LD 2.)

On August 25, 2015, Petitioner appealed his conviction to the appellate division of the

---
[1] "LD" refers to the documents lodged by Respondent with the answer.

1

Kern County Superior Court claiming the trial court improperly pressured the jurors to continue deliberating to reach a verdict. (LD 3.) The appeal was denied. (LD 3.)

On August 19, 2016, Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court. (LD 4.) He again claimed the trial court improperly pressured the jury to reach a verdict. He also claimed that counsel was ineffective in failing to object to the trial court's statements to reach a verdict. Last, he claimed he was actually innocent of the crime. The first claim was denied as having already been raised and denied; the second claim was denied on the merits; and the third claim was denied without comment. (Resp't's Answer, Ex. 1.)

On December 29, 2016, Petitioner filed a habeas petition in the California Court of Appeals, Fifth Appellate District ("Fifth DCA"). (LD 5.) On January 5, 2017, the Fifth DCA denied the petition without prejudice on procedural grounds, as follows:

> The "Petition for Writ of Habeas Corpus," filed on December 29, 2016, is denied without prejudice. (*City of San Jose v. Superior Court* (1995) 32 Cal.App.4th 330, 334.) The petition does not contain an adequate record which would include, but not limited to, the record before the Appellate Division of the Kern County Superior Court, complete copies of the briefs, and the opinion. Except for the issue raised in Exhibit A, petition has failed to show that he raised the other issues in the appellate division and a petition for writ of habeas corpus in superior court. Those other issues are conclusional and are not supported by a statement of the pertinent facts. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)

(Resp't's Answer, Ex. 2.)

Petitioner then filed a habeas petition in the California Supreme Court on March 3, 2017. (LD 6.) He raised the same three claims presented to the appellate court. (LD 6.) The California Supreme Court denied the petition, stating:

> The petition for writ of writ of habeas corpus is denied. (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474; *In re Waltreus* (1965) 62 Cal. 2d 218, 225; *In re Dixon* (1953) 41 Cal. 2d 756, 759; *In re Swain* (1949) 34 Cal.2d 300, 304; *In re Lindley* (1947) 29 Cal. 2d 709, 723.)

(Resp't's Answer, Ex. 3.)

On August 7, 2017, Petitioner filed the instant federal petition for writ of habeas corpus. (Doc. 1.) Respondent filed an answer on November 22, 2017. (Doc. 15.) Petitioner filed a traverse on January 11, 2018. (Doc. 22.)

///

## II. FACTUAL BACKGROUND

On June 20, 2014, at approximately 3:00 a.m., Kathleen Trotta was working as a correctional officer at the Kern Valley State Prison. (RT 125-26.) Petitioner was an inmate at Kern Valley State Prison at that time. (RT 130.) She noticed that all inmate cell lights were off in all sections, but Petitioner's cell light was still on. (RT 130.) She looked through Petitioner's cell window and saw him masturbating on the top bunk while staring directly at her. (RT 131.) She reported the incident to her supervising sergeant. (RT 141.)

## III. DISCUSSION

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);

Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's

ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. Review of Claims

The petition presents the following three grounds for relief: 1) The trial court erred when it pressured the jury to continue to deliberate to reach a verdict after the jury advised the court it was deadlocked; 2) Defense counsel rendered ineffective assistance when he failed to object to the trial court's statement directing the jury to continue to deliberate; and 3) Petitioner is actually innocent of the crime.

1. Jury Coercion

a. State Court Background

Petitioner raised this claim on direct appeal. The Kern County Superior Court summarized the relevant facts, as follows:

> The jury was sent out to deliberate on April 23, 2015 at 2:35 P.M. At 4:55 P.M. the jury was excused for the day after sending out a note. The note read: "Your honor, we have voted twice and have a split decision. We cannot change the position of any jurors at this time. The hour is late and we are agitated. Please advise. We would like to hear the testimony of officer Trotta."
>
> As the jury was being excused the foreperson asked the judge, apparently in front of all the jurors, ". . . if the court could reiterate the importance of not seeing time as a factor or having to return as being a factor in how we make our decisions that it is important to reach a verdict."
>
> The court responded as follows: " - - as citizens. We will take whatever time is necessary. Do what you need to do. We spent time and money to litigate this case and I don't want for us to just say okay, well, we couldn't reach an agreement after an hour, and hour and a half, let's just go home, and then we have to start all over again. We're talking taxpayer's money and time, people's lives. So again, we are dealing with the issues that are of importance and I would ask that you approach your task in that fashion. . . .
>
> The jury returned the next day and after receiving read back of at least two witnesses' testimony, retired to deliberate at 11:10 A.M. They returned with a guilty verdict at 11:54 A.M.

5

(Resp't's Answer, Ex. 1.)

b. Legal Standard and Analysis

Clearly established federal law provides that "[a]ny criminal defendant ... being tried by a jury is entitled to the uncoerced verdict of that body." Lowenfield v. Phelps, 484 U.S. 231, 241 (1988). A supplemental jury charge to encourage a deadlocked jury to try to reach a verdict is not coercive per se. Allen v. United States, 164 U.S. 492 (1896) (approving the "Allen charge"); Lowenfield, supra, 484 U.S. at 237 ("The continuing validity of this Court's observations in Allen are beyond dispute ..."). When faced with a claim of jury coercion, a reviewing court must "consider the supplemental charge given by the trial court 'in its context and under all the circumstances.'" Lowenfield, supra, 484 U.S. at 237 (quoting Jenkins v. United States, 380 U.S. 445, 446 (1965) (per curiam)).

In Lowenfield, the trial judge polled the individual jurors to learn what each juror thought about his or her ability to reach a sentencing recommendation if given more time to deliberate. 484 U.S. at 234-35. Only one juror felt that further deliberation was unnecessary. After learning this, the judge reminded the jury that in the absence of a unanimous jury recommendation, the court would impose a sentence of "Life Imprisonment without benefit of Probation, Parole, or Suspension of Sentence." Id. Thirty minutes later, the jury returned with a verdict sentencing the defendant to death. Id.

The Supreme Court found that the instruction in Lowenfield was less coercive than the Allen instruction because the judge did not specifically urge the minority jurors to consider the majority's view or the reasonableness of their own view during the supplemental charge. Id. at 237-38. The Supreme Court was similarly unpersuaded by the fact that the trial judge knew the identity of the single juror who believed continued deliberation was unnecessary because the trial judge did not know how that individual felt about the merits of the case - which the Supreme Court determined to be "clearly separate" inquiries. Id. at 240. While the Court noted that a short time lapse between the presentation of supplemental charges and the jury's return with a verdict suggests coercion, that fact is just one part of the totality of the circumstances analysis the Supreme Court requires for determining the presence of jury coercion. Id. Ultimately, the

6

Lowenfield Court found that the supplemental charge, even in the context of the judge's knowledge about each juror's desire to continue deliberating and the short time lapse between instruction and verdict, was not coercive. Applying the principles in Lowenfield in this case, it must be determined whether the state court's determination that the supplemental instruction given by the trial court was not coercive was objectively reasonable and based on the totality of the circumstances.

Here, it is clear that Petitioner fails to show that no fairminded jurist could possibly conclude that the supplemental instruction was not coercive. The jury advised the trial court that it was deadlocked after only one to one-and-a-half hours of deliberation. Given such a short time span of deliberation, it was not unreasonable for the trial court to advise the jury to continue to deliberate. Moreover, the jury also advised that trial court that it would like a readback of Officer Trotta's testimony. This clearly indicated that the jury desired to continue to deliberate and was in need of guidance. In addition, the main concern in Lowenfield was not present here. The trial judge did not specifically urge the minority jurors to consider the majority's view or the reasonableness of their own view. Id. at 237-38. The trial judge did not know the numerical division of the jurors, nor did he know which way the jurors were leaning. Therefore, the minority could not have felt singled out and thereby pressured by the trial judge. Likewise, the trial judge did not pressure the jury to hurry its decision; rather, the trial judge told the jurors to "take whatever time is necessary" and "Do what you need to do." (Resp't's Answer, Ex. 1.) Finally, there was not a short time span between the instruction and the jury's return of a verdict. The jury retired for the evening after the instruction was given. The next day, the jury received read back of at least two witnesses' testimony before returning to deliberation. Then, the jury returned with a verdict nearly one hour after returning to deliberate. While it is true that the trial judge referenced costs of trial in its instruction, the Supreme Court has never held that reference to the costs and time associated with trial to be coercive. Under the totality of the circumstances, the state court determination that the instruction was not coercive was not objectively unreasonable. The claim must be denied.

2. <u>Ineffective Assistance of Counsel</u>

a. <u>State Court Background</u>

Petitioner presented his ineffective assistance of counsel claims to the state courts in his habeas petitions. The Tulare County Superior Court provided the last reasoned decision, as follows:

> Regarding the ineffective assistance of counsel claim, the petitioner has failed to establish the basic requirements for success on that claim. The leading cases are **Strickland v Washington 466 U.S. 668, 104 S.Ct. 2052 and In Re Hardy (2007) 41 Cal.4th 977, 1018**)[.] The *Strickland* court stated " The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relief on as having produced a just result. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."(is. At p 687) [sic]
>
> The California Supreme Court in **In Re Alfredo Reyes Valdez (2010) 49 Cal.4th 715, 111 Cal.Rptr. 3rd 647** stated "To make the required showings, petitioner must show that his attorney's representation fell below an objective standard of reasonableness under prevailing professional norms" (Strickland Supra and Hardy Supra)Establishing [sic] a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced defendant, i.e. there is a : ["]reasonable probability["] that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This second part of the *Strickland* test "is solely one of outcome determination. Instead, the question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."
>
> In order to prevail on a claim of ineffective assistance of counsel a defendant must establish (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that a determination more favorable to defendant would have resulted in the absence of counsel's unprofessional errors. (*People v. Kipp* (1998) 18 Ca,4th 349, 366) . [sic] After reviewing the case this court concludes there is not a reasonable probability that a better verdict or sentence would have resulted.
>
> The court in ***People v. Dennis (1998) 17 Cal.4th 468, 540-541*** stated: "Our review is deferential; we make every effort to avoid the distorting effects of hindsight and to evaluate counsel's conduct from counsel's perspective at the time. A court must indulge a *strong presumption* that counsel's acts were within the wide range of

reasonable professional assistance".

(LD 13 at 1-2.) The claim was then raised in the appellate court and California Supreme Court, but it was rejected on procedural grounds that could have been cured, but were not. See People v. Duvall, 9 Cal.4th 464, 474 (1995). (LD 14-17.) Thus, the claim is unexhausted. Nevertheless, the Court may deny the claim on the merits notwithstanding the failure to exhaust. 28 U.S.C. § 2254(b)(2).

      b. Legal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v.

Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

In this case, Petitioner has failed to demonstrate that counsel erred by failing to object to the trial court's supplemental instruction. As discussed above, the instruction was not unduly coercive. Thus, counsel cannot be faulted for failing to raise a meritless objection. In addition, Petitioner cannot show prejudice, since any objection would have been rejected. The claim must be denied.

3. Actual Innocence

Petitioner claims he is actually innocent of the crime. He presented this claim in his habeas petitions to the state courts. The California Supreme Court rejected the claim on procedural grounds that could have been cured, but were not. Like the previous claim, this claim is unexhausted but the Court may deny it on the merits. 28 U.S.C. § 2254(b)(2).

Neither the Supreme Court nor the Ninth Circuit has "resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013); Jones v. Taylor, 763 F.3d 1242, 1246 (9th Cir. 2014). Even assuming such a claim exists, "the standard for establishing a freestanding claim of actual innocence is "'extraordinarily high' and . . . the showing [for a successful claim] would have to be 'truly persuasive.'" Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir.1997) (quoting Herrera v. Collins, 506 U.S. 390, 417 (1993). The Supreme Court has held that, at a minimum, the petitioner must "go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." Id. (citing Herrera, 506 U.S. at 442-44 (Blackmun, J., dissenting)). In determining whether a petitioner can make such a showing, the Supreme Court has referenced the

Schlup[2] "gateway" showing, which permits a petitioner to proceed on a procedurally barred claim by showing actual innocence. See, e.g., Carriger, 132 F.3d at 477. In order to pass through the Schlup actual innocence gateway, a petitioner must demonstrate that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" House v Bell, 547 U.S. 518, 537 (2006) (quoting Schlup, 513 U.S. at 327).

In this case, Petitioner fails to make such a high showing of actual innocence. He argues that it is possible that Officer Trotta mistook him for his cellmate. This is complete speculation. He claims his cellmate has since admitted the crime, but Petitioner offers nothing in support of this assertion. Thus, he fails to make a showing that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" House, 547 U.S. at 537 (quoting Schlup, 513 U.S. at 327). The claim is meritless.

## IV. CERTIFICATE OF APPEALABILITY

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

---

[2] Schlup v. Delo, 513 U.S. 298 (1995).

11

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Thus, the Court DECLINES to issue a certificate of appealability.

## V.     ORDER

Accordingly, the Court **ORDERS**:

1) The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

This terminates this action in its entirety.

IT IS SO ORDERED.

Dated:   **January 30, 2018**            **/s/ Jennifer L. Thurston**
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE